The next case this morning is 523-0635, People v. Carr. Arguing for the appellant is Amelia Carroll. Arguing for the appellee is Katrina Kuhn. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Good morning. Appellant, if you are ready to proceed, you may do so. I am. Thank you. Again, good morning. May it please the court. My name is Amelia Carroll, here on behalf of Mr. Justin Carr. In the case of Mr. Carr, the state, defense counsel, and the trial court all erred in handling Mr. Carr's plea and post-plea hearings. The state, by denying Mr. Carr the benefit of his bargain. Defense counsel, by failing to clarify the terms of the bargain when it mattered most. And revealing a conflict of interest by not raising her own ineffectiveness on two fronts. And the trial court, by failing to ensure that Mr. Carr's understanding of the full plea agreement was on the record, and failing to engage in a proper crankle inquiry. This court should remand the case to address these errors. Turning to the first issue of Mr. Carr having been denied the benefit of his bargain. Between the state's comments at the plea hearing and defense counsel's comments at the sentencing hearing, the record contains at least enough to demonstrate that Mr. Carr was denied a benefit for which he bargained. Namely, the opportunity to enter sentencing negotiations for testifying helpfully at his co-defendant's sentencing hearing. The first mention of this agreement term on the record comes from the state. Notably, after the court had already accepted the guilty plea, but still at the plea hearing. Counsel, let me ask you this. If the agreement was that the defendant and the state could enter into negotiations, but what if they never agreed? Judge, negotiations went nowhere. Nobody agreed. Judge, that was always a possibility that the further negotiations that could have transpired as a result of Mr. Carr's testimony could have led to the parties not seeing eye to eye on what that negotiated recommendation would be. However, the deal was that he was to receive, in consideration for his guilty plea, the opportunity to enter those negotiations following his testimony at Russia's sentencing hearing. The fact that he was never given that opportunity, therein lies the denial of the benefit of the bargain. So we know from... Didn't he get the benefit of the state not recommending the max? Did he ultimately receive that benefit? And wasn't that the essence of the agreement in the first place? The agreement was not that Mr. Carr would not receive the max. The agreement was that he would have the opportunity to negotiate that sentence following his participation in Russia's sentencing hearing. We do know that the state, specifically in its reply, had argued that by Mr. Carr's willingness to participate in sentencing rush, that that would be enough, a consideration of that would be enough to give him the benefit of his bargain. However, the deal was that the state would acknowledge Mr. Carr's cooperation in sentencing rush, not his stated willingness to cooperate, which presumably he had already conveyed at the time, in which case there would be no need to put it on the record at the plea hearing stage. But I really think that your question goes to prejudice, which was, would Mr. Carr's testimony at Russia's sentencing hearing have made a difference for him? We know from the evidence that came out at the sentencing hearing, we know that Russia's involvement in Mr. Carr's case was very significant and goes directly to one of the mitigating factors in the statute for mitigating, for mitigation, is whether or not Mr. Carr's actions were induced or coerced by somebody else. We know from the exhibits that were presented, the still frames of the surveillance footage from the home in which the kidnapping was alleged to have occurred, that we see a picture of a woman following the victim with a baseball bat as she comes down the stairs with blood dripping from her head. And we see, we know from the police conversations with the person, the ransom conversations, that the police hear a woman's voice to making the ransom demands and directing somebody with a man's voice to commit acts against the victim. So we know from the evidence that was presented that Russia's participation was significant. Had the testimony, had Russia's sentencing hearing occurred first, both the state and the court would have had the opportunity to hear from both Russia, perhaps an allocution from her counsel, what that argument would have been, but also would have heard from Mr. Carr in his testimony, what that connection really was and likely would have gone directly to those mitigating factors. Now, it's true that the state and Mr. Carr could have come to a conversation after that, and it could have been that the state would have offered something that still wouldn't have been agreeable to Mr. Carr. However, 25 years out of a possible 30, it's likely the state would have offered something less than 25 years, any number of years between 6 and 25, to take into account what he actually said on the record under oath. And we know from the way that the court actually sentenced Mr. Carr, giving him 24 years, that he was likely highly, the court was likely highly persuaded by the state's recommendation. So given what we know on the record about what happened in this case, it's likely that his testimony would have made a difference. Furthermore, it's likely that Mr. Carr significantly relied on that plea term in deciding to plea guilty at all, given that we know that the negotiations had been hotly contested in this case all the way until the day before the plea hearing. We know that Mr. Carr did not have an agreement with the state. It was on June 2nd, the day before the plea hearing in 2022, where the state said, we don't have an agreement and the only reason that we are very close at this point is because of concessions made by the state. The deal was that the parties contemplated presenting a negotiated recommendation following Mr. Carr's testimony at Russia's sentencing hearing and providing information, and that the parties planned to do that further negotiation. Mr. Carr reasonably, we know that, excuse me, we know that from defense counsel finally providing more insight into that at the sentencing hearing, confoundingly not then objecting to the sentencing hearing proceeding at that point, which goes to her ineffectiveness. But Mr. Carr therefore reasonably believed that he would testify first and therefore have that opportunity, that potential opportunity to favorably impact his sentence. All the parties assumed that, which is why they initially scheduled his sentencing hearing to be after Russia's. The state broke its promise first when it agreed to allow Mr. Carr's hearing to go first, and second, when it unilaterally modified the plea agreement to only considering his willingness to testify rather than negotiating based on his actual testimony. As a result, Mr. Carr should be given the opportunity to withdraw his plea. Turning then to sub-issue B in issue 1, which is the non-compliance with 402B on the part of the trial court. Here, the trial court failed to adhere to the requirement that the court personally questioned Mr. Carr in open court on the terms of the plea agreement and the promises made to obtain the plea. The purposes of 402B are to prevent misunderstandings of the terms of the agreement. The trial court's failure here led to that exact misunderstanding. And so at this point, because of that failing, it was impossible to discern whether Mr. Carr fully understood the consequences of being unable to negotiate a sentencing recommendation with the state and whether he would have pled guilty at all in that event, amounting to plain error. If, to the extent that the record is not clear enough about what Defense Counsel was raising in the post-plea motion about the benefit of the bargain, it was because of non-compliance with 604D. Though the record here, it was vague and conflicting at times about what the deal was. Now, we argue that there was enough there to show that this was a significant deal that, you know, was made where counsel would have this benefit in consideration for, meaning in legal terms, in exchange for his guilty plea. But to the extent that we have issues with this vagueness, it has to do with counsel's failings here. So at the plea hearing, the state indicated that it agreed to acknowledge any cooperation with Russia's sentencing in consideration for its guilty plea. At the sentencing hearing, Defense Counsel stated that Mr. Carr was going to avail himself of the state's offer to speak at Russia's hearing so that the state could take all the information revealed at that sentencing hearing and Mr. Carr and I discussed the possibility of presenting a negotiated recommendation. Then, in the amended motion to withdraw the plea, counsel stated that Mr. Carr did not receive the benefit of his bargain in that the state agreed to conduct the co-defendant sentencing hearing after the defendant's sentencing hearing and afford him the opportunity to speak at the co-defendant's sentencing hearing. First of all, in the way that counsel put that, she gets the timing wrong. It was that Russia's sentencing hearing was supposed to be first, not Mr. Carr's. But putting that aside, which was likely some kind of a copy error, she's now confusing what the actual benefit was. So, at the sentencing hearing, she's saying that the benefit was the opportunity to negotiate a sentencing recommendation after the plea and before the sentencing hearing. And in this telling, in the amended motion to withdraw the plea, she indicates that the benefit is just the opportunity to speak. And that obfuscates the reality that the intention of the parties, based on what was on the record at the plea hearing and the sentencing hearing, was that at the plea hearing, they were going to schedule the sentencing hearing for Mr. Carr to be after Russia's and that Mr. Carr was to perform testimony that would benefit the state at Russia's hearing and that in exchange, he would get the benefit of being able to negotiate the sentencing hearing. By counsel making that unclear where it counted, which was in the amended motion to withdraw the plea, she does not properly bring the claim, which makes her non-compliant with 604D. So, not only does she fail to make that claim clearly in argument, but she also failed to include testimony from Mr. Carr or from the assistant state's attorney on what exactly the deal was. She didn't include her own affidavit or affidavits from others or emails that might have articulated what exactly the deal was leading to this feeble argument. So, all of these instances also demonstrate that she was ineffective as plea counsel. And the fact that she… Counsel, I see your time has expired. I'll give you a little time to wrap up. Thank you. I appreciate that. As I was saying, just that the 604D non-compliance also relates to the conflict of interest as shown by not claiming her own ineffectiveness. In conclusion, for the layered errors on the part of the state, the trial court, and counsel, this court should remand for further proceedings. Thank you. Justice Cates, any questions? Justice Welsh? No questions. All right. Thank you. Appellee, or appellant, you may have time for rebuttal. Appellee, you may proceed. Thank you, Your Honors. Good morning. My name is Katrina Kuhn. I represent the people of the state of Illinois. May it please the court. Defense counsel has absolutely no right to withdraw his guilty plea. And I'd like the court to note that this is defendant's burden in this appeal. First of all, as to the plea agreement or plea arrangement, as my opposing counsel has noted, the terms were vague and conflicting. There was no written agreement. However, the agreement on the record was that the defendant be willing and able to cooperate at Russia's sentencing. That is what the agreement was. And the people held up their end of the bargain. They made a sentencing recommendation based on that potential cooperation. And in the record, at the June 1st date, which was before the case management conference, the state's attorney actually said there would be no negotiations after tomorrow, which was the case management conference. And there was no indication from the prosecutor or defense counsel that further negotiations were needed. Defendant actually admits on page 18 of his brief that there was no guarantee at the time of the plea that the parties could negotiate a sentencing recommendation in the future. There was no indication that the people were waiting to see what the defendant would say at Russia's hearing before it made a sentencing recommendation. Actually, the people acknowledged twice on the record, defendant's willingness to cooperate and reiterated that it was taking its consideration, was taking defendant's willingness to cooperate in consideration in making its recommendation. On page 7 of the people's brief, I lay out the colloquy at the record 238 and 239. The state's attorney said, we have taken into consideration his wanting to do that, meaning his wanting to testify at Russia's sentencing in our recommendation. We are giving him the benefit of the doubt and that's worked into our recommendation. End of story. Defendant cites also in his brief to defense counsel's remarks at the sentencing and the plea proceedings that there's often a further discussion. There was no indication that any further discussions were going to occur here. And this is an objective test. This is not looked at in terms of what the defendant's subjective beliefs were. Excuse me, your honors. Defendants, after the fact assertions of his personal belief as to what would occur are not relevant. There must be some objective proof that that was justified. And as far as the scheduling of the different sentencings, sure, you know, that is what maybe was contemplated at the time. The defendant did not actually have any right to testify there. The state could put on whatever evidence it wanted. That is what was contemplated at the time. The court also, the trial court has the ability to control its own docket. The trial court had granted several continuances and it had the right to schedule the sentencing and proceed with the sentencing anyway in any order that it wanted to. And, you know, defendant, I think defendant asks this court to presume what would have happened at Rush's sentencing, that Rush would have provided this testimony that would have implicated her more greatly. We do have video. There is video of defendant holding a firearm. This also goes right into the key component of this analysis, which Justice McHaney touched upon, which was that defendant received the great benefit of this agreement. Defendant was not standing there without anything to show for this, for his willingness to cooperate at the sentencing. Defendant counts were dismissed. Defendant faced, it also should be noted that defendant sexually assaulted the victim on his own. That had nothing to do with Rush. That, for that count alone, he was subject to, that was a class X plus 15. So he was subject to 45 years just on that count. He had six other counts dismissed. He was also subject to mandatory consecutive sentences. That was off the table. He then was down to six to 30 years. He also avoided, by avoiding a sexual assault conviction, he avoided all the concomitant things that go with that, such as sexual offender registration and things like that. And then when he was down to the six to 30 years, defendant, the people recommended 25 years and the state, the, pardon me, the court gave him 24 years. That doesn't necessarily mean there was anything wrong with that. The court was able to sentence him to anything within the range. So that, you know, the court, the court could, the most important factor is the seriousness of the crime. The court had very brutal and unprovoked crimes on which it was sentencing the defendant. And that's what led to this defendant sentence. And defendant also suggests without any basis that had he testified at Rush's sentencing, that would have somehow mitigated his punishment and that then the state would have recommended less than 25. And then the court would have sentenced him to less than 24. Now the state's attorney said at defendant sentencing that this was not a quote minimum sentence type of case. So defendant is purely speculating. Defendant did get the opportunity to tell his side of things. He made a lengthy statement in allocution, which was quite lucid. And he acknowledged that he failed the victim and he understood the accountability theory and that he made a poor decision. That is a statement of remorse. That's a statement that he knew what he was doing. And again, the court heard that and the defendant received the great benefit of not having to testify. And the people were the one who gave him that benefit and he received the benefit without even having to testify. Now, turning to the counsel's other arguments about sections 1B and 1C of their brief. The court's admonition was that the punishments pursuant to Rule 402B completely complied with the rule. And defendant also signed a written plea form. There's no indication that there was anything wrong with that and he signed a written plea form that indicated that no promises were made concerning any specific sentence. He was fully cognizant. The plea form is at 148 in the common law record. Defense counsel also talks about how counsel was somehow deficient and failing to raise the benefit of the bargain in the 604D motions. Counsel diligently represented defendant. Counsel complied with the rule. Counsel complies with the rule even if she hadn't filed 604D certificates, which she did. The facts here are of record and the record must refute the certificate. Defendant argues that counsel needed to provide, that needed to show that there were specific promises exchanged. Well, counsel couldn't do that because there were no specific promises. Counsel, there was no additional discussion contemplated as the people have already argued. And counsel was not required to present any additional evidence of the plea agreement where the plea agreement was fully stated on the record. And so defendant is kind of, if your honors examined this more closely, defendant is kind of making a house of cards here. And so if one of the cards comes out, then they all come down. And again, I would like to direct your honors to read the defendant's statement in elocution, which is at four pages of the record. He says he would go back and change things if he could. And I'm happy to answer any questions your honors may have. Justice Case, any questions? Justice Welsh? Yes. Thank you, counsel. You'll have time for rebuttal. I mean, rebuttal now. You have a moment. Thank you. Your honors, either the plea agreement terms were clear and Mr. Carr was denied the benefit of his bargain, or the plea terms were not clear. And that's due to 402B and 604D noncompliance and a conflict of interest for defense counsel's failure to raise her own ineffectiveness in handling the benefit of the bargain. Opposing counsel states that the defendant, the deal was that the defendant was to be willing and able to cooperate. Those are added terms by the state. And the state furthermore skips the part where the prosecutor on record specifically said that this was a plea term in consideration for his guilty plea, conveying the significance of this term to the deal. The state also claims that there's no indication that the state was waiting to see what the defendant would say or how the defendant would cooperate, which doesn't make sense given when exactly that record was made. In other words, there would have been no need to put it on the record at the plea hearing that this term existed, if the state was always just planning on factoring in whatever it wanted to factor in at the sentencing hearing for its own recommendation. It only makes sense to put that on the record if it was locking in Mr. Carr's performance and stating that it was being done in consideration for his plea. In other words, as part of the inducement for him to plea guilty at all. So the record indicates not that it was the defendant's willingness and ability to cooperate that was going to be significant, but rather that his cooperation was going to be a point of negotiation, which we learned from defense counsel at the sentencing hearing. Again, the state completely ignores the record that defense counsel made at the sentencing hearing, fleshing out what the state meant when it made its record at the plea hearing. Furthermore, the state concedes that it was contemplated at the time of the plea hearing that Rush's sentencing hearing would go first. So it doesn't make sense to say on the one hand that they weren't waiting to hear what he would say and yet saying that all the parties contemplated and tried to ensure that Rush's sentencing hearing would go first and it wouldn't have made sense to put it on the record at the plea hearing at all unless it was part of an exchange that was going to continue to take place. The state also notes that the court had the right to control its own docket. At the end of the day, it was due to the errors of counsel and the trial court for not getting the clear terms of the deal on the record that led to the parties deciding to put aside what was essentially the benefit of the bargain that Mr. Carr was supposed to receive. And that's why we're here today. So part of the court being disinclined to continue Mr. Carr's proceeding is attributed to the fact that the court was not aware of exactly what these plea terms were, and especially confoundingly, since the defense counsel makes this clarification during the sentencing hearing, but then proceeds to not object on the record because of the way that it implicated Mr. Carr's due process rights. The state also noted the sexual assault to the victim charge here and claims that had nothing to do with Rush. These facts are difficult, but the statements that came out at the sentencing hearing actually do indicate that based on the ransom calls that the police overheard that Rush actually was involved in directing some of those acts that Mr. Carr was accused of. And so the record indicates that she was involved even in that. The fact that the outcome for Mr. Carr here was for far less prison time than it could have been had he been convicted on all counts and given the max, that does not mean that this plea hearing was constitutionally sound. And I would behoove this court to look at the fact that this is really about the constitutional priority of this plea hearing and not about whether or not we can just look past it because it seems like from our perspective that Mr. Carr got a good deal. The state also brings up the plea form, but the reality is that the plea form is not helpful to us because the plea form is deficient. First of all, the rule requires that the confirmation of the plea terms and the voluntariness of the plea be clarified in court in the open record, or excuse me, on the record in open court. Furthermore, the form is rebutted by what's actually in there. There is an indication that there were no promises made, that box is checked. There's also an indication that there were no concessions made with regard to the charges. But of course, there were seven charges that were dismissed as part of the plea. So the form is actually not going to help us. So in sum, your honors, I would ask that looking at the layered errors on the part of the state, the trial court and counsel, that this wasn't done properly, and that as a result, this court should remand for further proceedings, either for a new motion to withdraw the plea, the opportunity for Mr. Carr to withdraw the plea, or for a crankled hearing. Thank you. All right, Justice Case, any further final questions? No, thank you. Justice Welsh? Thank you. All right, thank you, counsel. That will conclude the arguments. We will take this matter under advisement and issue a ruling in due course.